Redacted Version

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

**ALABAMA AIRCRAFT INDUSTRIES,**
**INC.- BIRMINGHAM,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant, and,**

**THE BOEING COMPANY,**

**Intervening Defendant.**

# DEFENDANT'S MOTION TO DISMISS WITH APPENDIX

**Respectfully submitted,**

**GREGORY G. KATSAS**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**BRIAN M. SIMKIN**
**Assistant Director**

**DOUGLAS K. MICKLE**
**Trial Counsel**
**U.S. Department of Justice**
**Civil Division**
**Commercial Litigation Branch**
**1100 L St., N.W.**
**Attn: Classification Unit - 8th Floor**
**Phone: (202) 307-0383**
**Fax: (202) 353-7988**

**Attorneys for Defendant**

**OF COUNSEL:**

**MAJ CHRISTOPHER L. McMAHON**
**Air Force Legal Operations Agency**
**Arlington, Virginia**

**KENNETH KITZMILLER**
**Tinker Air Force Base Legal Office**
**Oklahoma City, Oklahoma**
**Washington, D.C. 20530**

**August 11, 2008**

# TABLE OF CONTENTS


DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . 3

I. Nature Of The Case . . . . . . . . . . 3

II. Statement Of Facts . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . 8

I. Legal Standards For A Motion To Dismiss For Lack Of Jurisdiction . . . . . . . . . . 8

II. AAII Did Not Submit An Offer And Lacks Any Chance, Let Alone, A "Substantial Chance" For Award . . . . . . . . . . 10

A. Pemco, Not AAII, Submitted An Offer In This Procurement, Detailing Pemco's Capability, Not AAII's Capability, To Perform Upon This Contract . . . . . . . . . . 10

B. Because AAII Recognizes It Is Not The Same Entity As The Original Offeror, Pemco, AAII Possesses No Direct Economic Interest Here . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . 14

Case 1:08-cv-00470-CFL Document 76-1 Filed 10/01/2008 Page 3 of 20

## TABLE OF AUTHORITIES

**CASES:** **PAGES:**

Alaska Pulp Corp. v. United States,
38 Fed. Cl. 141 (1997) . . . . . 8

Alfa Laval Separation, Inc. v. United States,
175 F.3d 1365 (Fed. Cir. 1999) . . . . . 9

Am. Fed'n of Gov't Employees v. United States,
258 F.3d 1294, 1302 (Fed. Cir. 2001) . . . . . 9

Bender v. Williamsport Area Sch. Dist.,
475 U.S. 534 (1986) . . . . . 8

California v. LaRue,
409 U.S. 109 (1972) . . . . . 8

Nat'l Surety Corp. v. United States,
20 Ct. Cl. 407, 409 (1990) . . . . . 8

Emerald Coast Finest Produce v. United States,
79 Fed. Cl. 466 (2007) . . . . . 10

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir.2001) . . . . . 10

Indium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879, 884 (Fed. Cir. 1985),
cert. denied, 479 U.S. 820 (1986)),
aff'd, 101 F.3d 714 (Fed. Cir. 1996) . . . . . 8

Microdyne Outsourcing, Inc. v. United States,
72 Fed.Cl. 230 (2006) . . . . . 10

Myers Investigative and Security Services, Inc. v. United States,
275 F.3d 1366 (Fed. Cir. 2002) . . . . . 9

Steel Co. v. Citizens for a Better Environ.,
523 U.S. 93 (1998) . . . . . 8

Thomas v. United States,
34 Fed. Cl. 619 (1995) . . . . . 8

Case 1:08-cv-00470-CFL Document 8-2 Filed 08/01/2008 Page 4 of 20

Triax Co. v. United States,
20 Ct. Cl. 507, 509 (1990) . . . . . . . . . . 8

**DECISIONS OF THE COMPTROLLER GENERAL**

Ionics Inc.,
Comp. Gen. B-211180, Mar. 13, 1984, 84-1 CPD ¶ 290 . . . . . . . . . . 13

To The Secretary of the Interior,
43 Comp. Gen. 353, 372, 1963 CPD ¶ 81 . . . . . . . . . . 13

**STATUTES**

28 U.S.C. § 1491 . . . . . . . . . . 1, 9

31 U.S.C. § 3727 . . . . . . . . . . 13

41 U.S.C. § 15 . . . . . . . . . . 13

**REGULATIONS**

48 C.F.R. § 9.103 . . . . . . . . . . 5

48 C.F.R. § 42.1203 . . . . . . . . . . 11

**DEFENDANT'S APPENDIX INDEX**

Exhibit D to AAII's Motion to Supplement,
Securities and Exchange Commission Form 10-K,
Annual Report Pursuant to Section 13 or 15(d)
of the Securities and Exchange Act of 1934,
For the Fiscal year Ended December 31, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Exhibit 1 to Intervenor, the Boeing Company's Memorandum
in Support of Motion to Dismiss,
Securities and Exchange Commission Form 8-K,
Current Report Pursuant to Section 13 or 15(d)
of the Securities and Exchange Act of 1934, September 19, 2007 . . . . . . . . . . . . . . . . . 96

Exhibit 2 to Intervenor, the Boeing Company's, Memorandum
in Support of Motion to Dismiss,
Securities and Exchange Commission Form 10-Q,
Quarterly Report Pursuant to Section 13 or 15(d)
of the Securities and Exchange Act of 1934,
for the Quarterly Period Ended March 31, 2008. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **ALABAMA AIRCRAFT INDUSTRIES, INC. - BIRMINGHAM,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 08-470C** |
| | ) | **(Judge Lettow)** |
| **UNITED STATES,** | ) | |
| **Defendant, and,** | ) | |
| **THE BOEING COMPANY,** | ) | |
| **Intervening Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS WITH APPENDIX**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court to dismiss the complaint of plaintiff, Alabama Aircraft Industries, Inc. - Birmingham ("AAII"), for lack of jurisdiction.

This Court lacks jurisdiction because AAII is not an interested party pursuant to 28 U.S.C. § 1491(b)(1). AAII is not entitled to interested party status because AAII did not submit a proposal in response to the Department of the Air Force's ("Air Force") Request for Proposals (RFP) FA8105-05-R-0014 for KC-135 Program Depot Maintenance ("PDM") Services. Pemco Aeroplex, Inc. ("Pemco"), along with defendant-intervenor, the Boeing Company ("Boeing"), [redacted], submitted proposals. It is beyond dispute that the Air Force has no record in its contract file of an offer for this contract from a small–business named Alabama Aircraft Industries, Inc. - Birmingham. Indeed, AAII did not exist when the original award decision was made.

Case 1:08-cv-00470-CFL Document 36-2 Filed 04/01/2008 Page 7 of 20

In addition to AAII's failure to actually submit a proposal in response to the RFP, AAII is not an interested party because AAII does not possess a direct economic interest in the challenged award decision. AAII lacks the requisite economic interest in this procurement because AAII is not prejudiced by the challenged award decision. Prejudice is lacking because AAII does not have a substantial chance of receiving the award. AAII's probability of success is nil, simply because AAII, by its own admission, does not have the financial resources to perform. AAII's financial instability clearly impacts AAII's present responsibility to perform, and certainly its actual ability to perform the contracted services.

We demonstrate below that Pemco is a separate entity from AAII, with many substantial differences between their organizations, especially in the area of financial resources. Apart from the obvious difference in names, Pemco was a large business that is involved in both commercial and military work with large financial backing. In contrast, AAII is a small business with a brief work history that is limited to Government work. AAII's financial situation is also quite unstable, which is another major difference between it and Pemco. In sum, the company appearing before this Court seeking award of a contract valued in excess of $1 billion, is not the same as any entity that had an offer evaluated by the Air Force.

In support of this motion, defendant relies upon AAII's complaint, the administrative record, defendant's appendix, and the following brief.[1/]

---

[1/] AAII's complaint will be referred to as "Compl." The administrative record regarding the Air Force's award of the contract to Boeing will be referred to as "AR Tab__, p. __." Defendant's appendix is attached to this motion and will be referred to as "DA __."

## STATEMENT OF THE ISSUE

Whether this Court possesses jurisdiction to entertain AAII's protest of the Air Force's award of the KC-135 Program Depot Maintenance services contract to Boeing.

## STATEMENT OF THE CASE

### I. Nature Of The Case

AAII filed this protest seeking to invalidate the award of a contract to Boeing for PDM services. Prior to filing this protest, another company, Pemco, twice protested to the Government Accountability Office ("GAO") under this same procurement. Pemco was unsuccessful at the GAO in overturning the award to Boeing. AAII's protest reasserts the unsuccessful arguments Pemco raised at the GAO and seeks from this Court injunctive and declaratory relief in the form of an order that: 1) invalidates the Air Force's award to Boeing, 2) awards the contract to AAII, 3) requires the Air Force to take other corrective action as appropriate, and 4) awards AAII its attorneys fees, costs, proposal preparation expenses, and any other relief the Court deems appropriate. See Compl. p. 110, Prayer For Relief. The United States now respectfully moves the Court to dismiss the present action for lack of jurisdiction.

### II. Statement Of Facts

The Air Force issued a Request for Proposals FA8105-05-R-0014 ("RFP" or "the solicitation") on August 19, 2005, for a contract to perform various types of maintenance upon active duty Air Force, Air National Guard, and Air Force Reserve Command KC-135 aircraft using a performance based commercial contract with a four year and one month base period and five one-year options. AR Tab 46.12, p. 3-28 (RFP).

Boeing initially proposed to include Pemco as a subcontractor. See generally, AR Tab 50. As a result of various amendments to the RFP, Boeing decided to sever its relationship with Pemco and submit a revised proposal. See generally, AR Tab 22. Similarly, Pemco submitted a proposal in its own right. See generally, AR Tab 8. Through multiple rounds of negotiations, primarily in the form of evaluation notices and responses thereto, the offerors submitted multiple proposal revisions. See generally, AR Tabs 8-16 and 22-30. Pemco submitted its last "final" proposal revision in June 2007 in the form of change pages.[2/] See generally, AR Tab 16.

Using the Pemco submission at AR Tab 16 as a reference for what Pemco presumably intended to serve as the basis for the selection of its offer, the entity known as Pemco made several representations and certifications about itself, as it was required to do by the applicable regulations and statutes. Specifically, Pemco certified itself as a "Large" business. AR Tab 16, p. 1840. Relying upon this certification, as well as the remainder of the information Pemco provided, to include information regarding its financial resources, the contracting officer, pursuant to 48 C.F.R. § 9.103, found Pemco to be responsible. AR Tab 46.32, p. 7 (“All Offerors are large businesses and have adequate financial resources to perform the contract, or the ability to obtain them.”).

In its attempts to favorably market itself to the Air Force, Pemco touted the stability and resources that it gained from its parent group, Pemco Aviation Group, Inc. Pemco, in its proposal, indicated inter alia that the proposed program manager for the proposed effort would

[2/] Defendant has searched for, but has been unable to locate, any submission by a self-proclaimed small business named AAII to any of the Air Force decision makers, let alone a verified proposal in response to this solicitation that the Air Force could accept to form a binding contract.

Case 1:08-cv-00470-CFL Document 81 Filed 08/18/2008 Page 10 of 20

report to the chief executive officer of Pemco Aviation Group, Inc. (AR Tab 16, p. 23) and the organizational charts in the proposal set out the involvement of Pemco Aviation Group, Inc. Id. at 24, 356. Pemco's technical volume provided that senior leadership from the parent company would be focused on the proposed effort. Id. at 99. Finally, Pemco's past performance information clearly referenced the parent company's facilities. Id. at 1935.

On September 10, 2007, the Air Force made award to Boeing. AR Tab 46.63, p. 1. The protests to the GAO followed shortly thereafter eventually leading to this Court. See generally, AR Tabs 3, 55, 72, 73, and 74. However, during this bidding process, Pemco began a radical, entity changing sale and name change. See DA p. 08 (Exhibit D to AAII's Motion to Supplement, Securities and Exchange Commission ("SEC") Form 10-K, Annual Report Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934, For the Fiscal year Ended December 31, 2007, p. 7 of 94). See also DA p. 98 (Exhibit 1 to Intervenor, the Boeing Company's, Memorandum in Support of Motion to Dismiss, SEC Form 8-K, Current Report Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934, September 19, 2007); DA p. 119 (Exhibit 2 to Intervenor, the Boeing Company's, Memorandum in Support of Motion to Dismiss, SEC Form 10-Q, Quarterly Report Pursuant to Section 13 or 15(d) of the Securities and Exchange Act of 1934, for the Quarterly Period Ended March 31, 2008).

On July 11, 2007, Pemco entered into a stock purchase agreement. See DA p. 98 (Boeing Exhibit 1, at p. 2 of 4). On September 17, 2007, Pemco's stockholders adopted and approved the sale. Id. Pemco sold Pemco World Air Services, the commercial division of Pemco Aviation Group. The $43 million sale included the Commercial Services Segment ("CSS") and the Manufacturing and Components Segment ("MCS"), amounting to

approximately half of Pemco's assets. Id. As part of the transaction, what little was left of the remaining portion of the company relinquished its rights to the name Pemco. Id. On November 6, 2007, AAII officially qualified with the Small Business Administration as a small business for military contracts. DA p. 31(AAII Exhibit D, p. 30 of 94). In the same document that AAII describes the restructuring and sell-off of its business as well as the newly acquired status as a "small business," AAII described its financial condition, as follows:

> Several events could significantly impact the generation, availability and uses of cash over the next twelve months including:
>
> – whether the Company is successful in its protest of the USAF award of the KC-135 contract to The Boeing Company;
>
> – whether the Company is granted a waiver of contributions to its defined benefit pension plan through December 31, 2008;
>
> – whether the Company sells its subsidiary, Space Vector Corporation, in 2008;
>
> – whether the Company is able to win additional contracts, including in part as a result of qualifying with the Small Business Administration as a small business under certain North American Industry Classification System codes; and
>
> – whether the Company is able to get additional funding from lenders to fund working capital increases needed if additional contracts are won.
>
> There are no assurances that the Company will be successful in any of these respects and negative outcomes could adversely impact the Company's ability to meet financial obligations as they become due.

DA p.6-8 (AAII Exhibit D, p. 5-7 of 94).

Looking forward, AAII acknowledged that it financial picture is similarly dire:

> The Company has no current arrangements with respect to sources of additional financing, and its negative results of operations in prior years and the current lack of long-term contracts, exacerbated by the current state of the credit markets, will likely make it more difficult and expensive for the Company to raise additional capital that may be necessary to continue its operations.
>
> The Company's primary sources of liquidity and capital resources include cash-on-hand, cash flows from operations (primarily from collection of accounts receivables and conversion of work-in-process inventory to cash) and potential borrowing capability through lenders. Principal factors affecting the Company's liquidity and capital resources position include, but are not limited to, the following: results of operations; the results of the Company's protest of the U.S. Air Force ("USAF") award of the KC-135 contract to The Boeing Company; collection of accounts receivable; funding requirements associated with the Company's defined benefit pension plan; settlements of various claims; and potential divestitures. The Company anticipates that cash-on-hand will be sufficient to fund operations, make minimal capital expenditures and make scheduled payments on debt obligations for the next twelve months. However, the Company is proposing and is expecting to propose on several programs in the next twelve months. If the Company is successful in winning some or all of these programs, additional financing may be needed to fund working capital requirements related to the buildup of accounts receivable and inventory on the projects. Moreover, the Company does not have sufficient cash to make the required contributions to its defined benefit pension plan without negatively impacting the cash and liquidity of the Company by the end of 2008. Therefore, the Company applied on February 29, 2008 to the Internal Revenue Service for a waiver of contributions to its defined benefit pension plan through December 31, 2008. Without a waiver of contributions, the Company would be required to contribute approximately $3.7 million for the 2007 plan year by September 15, 2008. Contribution calculations for the 2008 plan year have not been completed. The Company currently estimates that the quarterly payments for the 2008 plan year will be approximately $1.1 million to $1.2 million with the first quarterly payment due April 15, 2008.

Id. at 34 (AAII Exhibit p. 94).

## ARGUMENT

### I. Legal Standards For A Motion To Dismiss For Lack Of Jurisdiction

Subject matter jurisdiction may be questioned at any time, e.g., Triax Co. v. United States, 20 Ct. Cl. 507, 509 (1990) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) and California v. LaRue, 409 U.S. 109, 113 n.3 (1972)), and jurisdiction is a threshold matter that must be addressed before the merits of an action are considered. See Steel Co. v. Citizens for a Better Environ., 523 U.S. 93, 94-95 (1998). To that end, not only is it the case that a defendant may file a motion to dismiss on jurisdictional grounds at any time under RCFC Rule 12(b)(1), but Rule 12(h)(3) also provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." The burden to establish the Court's jurisdiction rests upon the plaintiff. Nat'l Surety Corp. v. United States, 20 Ct. Cl. 407, 409 (1990).

"[I]n ruling on a motion to dismiss for lack of jurisdiction, the court is not confined to an examination of the complaint, but may take into account 'evidentiary matters outside the pleadings.'" Thomas v. United States, 34 Fed. Cl. 619, 621 (1995) (quoting Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986)), aff'd, 101 F.3d 714 (Fed. Cir. 1996) (table). To withstand a Rule 12(b)(1) motion to dismiss for lack of jurisdiction when the defendant challenges jurisdiction, the plaintiff must prove the allegations supporting jurisdiction by a preponderance of the evidence. Id. at 748; Alaska Pulp Corp. v. United States, 38 Fed. Cl. 141, 144 (1997). For the reasons set forth in detail below, this is a burden that AAII cannot meet.

This Court's jurisdiction to consider bid protests is conferred and defined by the Tucker Act, 28 U.S.C. § 1491(b). Specifically, the Court has

> jurisdiction to render judgment on an action by an **interested party** objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation or regulation without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C.§ 1491(b)(1) (emphasis added). To pursue its action here, AAII must establish that it is an "interested party."

Although section 1491 does not define the term "interested party," the United States Court of Appeals for the Federal Circuit, in defining the term, has adopted a definition utilized by the Comptroller General in connection with its bid protest jurisdiction. Myers Investigative and Security Services, Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002). As noted by the court of appeals, "[i]n bid protests under the Tucker Act, "we . . . construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id. (quoting Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001)).

Direct economic interest is deemed to be affected only where the protestor establishes that it had a substantial chance of securing the award absent a prejudicial defect in the process. Myers, 275 F.3d at 1369-70. "Substantial chance" means that the protestor was in the "zone of active consideration." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999). "The term 'interested parties' excludes those who did not submit proposals, bidders

who withdrew from solicitation, and offerors who were not competitively ranked for the award." Emerald Coast Finest Produce v. United States, 79 Fed. Cl. 466, 471 (2007) (citing, Microdyne Outsourcing, Inc. v. United States, 72 Fed.Cl. 230, 232 (2006) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir.2001)).

As we demonstrate below, AAII does not meet the threshold requirement for an interested party because it did not submit a bid; or, in the alternative, if had submitted a bid, which it did not, it failed to keep the bid current and effectively withdrew the bid. Thus, it no longer remains competitive for award.

## II. AAII Did Not Submit An Offer And Lacks Any Chance, Let Alone, A "Substantial Chance" For Award

### A. Pemco, Not AAII, Submitted An Offer In This Procurement, Detailing Pemco's Capability, Not AAII's Capability, To Perform Upon This Contract

Pemco, the company that submitted a bid, certified itself as a large company, with access to the financial and personnel resources of a parent group called Pemco Aviation Group, and called itself Pemco Aeroplex, Inc. Pemco never made any revisions to this information. AAII, upon the other hand, is a small company, with no parent group and shaky financial backing. To date, there is no record of AAII submitting any proposal to the Air Force seeking award of this contract, and certainly has never provided the Air Force with any information that it could even survive a responsibility determination by the Air Force. Moreover, there is nothing in the record that indicates that Pemco assigned, or even attempted to assign, its interest in the proposal Pemco submitted to AAII.

Indeed, if Pemco was awarded this contract, as AAII requests the Court do here, the Federal Acquisition Regulation ("FAR") makes clear that such changes must be presented to and

approved by the CO. 48 C.F.R. § 42.1203 ("If a contractor wishes the Government to recognize a successor in interest to its contracts or a name change, the contractor must submit a written request to the responsible contracting officer.").

We acknowledge that this FAR provision is only binding upon an awardee, and Pemco never received the award. Nevertheless, the notice and approval requirements set forth in this provision should be met, at a minimum, prior to asserting standing. The purpose of informing the contracting officer of a corporate name change or that there are successors in interest is so that the contracting officer can determine if the changes being made substantially alter the agreement and to protect the Government's interests. Indeed, a specific reason is so the proposed successor's responsibility pursuant to FAR Subpart 9.1 can be determined.[3/] 48 C.F.R. § 42.1203(c)(2). If Pemco actually wished to change its name, or declare AAII a successor in interest to the bid, as AAII appears to allege, Pemco should have done so formally so that the Government could determine if its interests are protected. To allow AAII to obtain standing without having even attempted to notify the Air Force that it was assuming Pemco's proposal undermines the entire bidding process. Indeed, under the circumstances that AAII seeks the Court to endorse, the Air Force would be at risk of having to award a contract to an entity the Air Force possesses imperfect information on.

Likewise, an offeror, like Pemco, with an alleged successor-in-interest, would now have an incentive to withhold potentially harmful information about the successor-in-interest so that it

---

[3/] The contracting officer found Pemco responsible because at the time of its proposal, it was a large business that had "adequate financial resources to perform the contract, or the ability to obtain them." AR Tab 46.32, p. 7. At this time, AAII is neither a large business, not does it have the same financial resources that were reflected in Pemco's evaluated proposal.

could keep the original offer alive to preserve standing for possible litigation. The purpose of FAR 42.1203, indeed, the competitive process, is undermined if a competing party and its alleged successor-in-interest are allowed to make radical changes to a standing proposal without informing the contracting agency.

This is because in the normal course of business, the United States government, acting through its agents, solicits proposals for services from prospective offerors. Those offerors then offer those services in the prescribed form, subject to the applicable statutory prescriptions and regulatory guidance, coupled with the required representations and certifications, to the Government for a stated price. The Government then, after an exhaustive evaluation, ultimately accepts the responsive offer from the responsible offeror that represents the best value to the Government by actually awarding the contract to that responsible offeror.[4/] In this case, AAII is asking the Court to completely circumvent this competitive process. This in anathema to the principles upon which the Federal acquisition system is based. Moreover, AAII is asking the impossible because AAII has not submitted a responsive offer the Government could actually accept via the contract award process. Therefore, based upon the reasons set forth above, AAII's protest should be dismissed.

**B. Because AAII Recognizes It Is Not The Same Entity As The Original Offeror, Pemco, AAII Possesses No Direct Economic Interest Here**

AAII also candidly admits that it is not the same entity as Pemco. In its complaint, AAII

[4/] Because all offers have been submitted and analyzed, and an award was made, it is impossible for AAII to provide this type of essential information without having the Air Force give AAII a chance to submit what amounts to a "new" offer. This gamesmanship of the procurement system should not be endorsed, and AAII should not be allowed to submit a "new" offer or revise Pemco's offer.

Case 1:08-cv-00470-CFL Document 76-1 Filed 10/08/2008 Page 18 of 20

states that "[a]t the time of the original award, AAII was not a "small business" and it therefore did not receive credit as a small business in the Air Force's evaluation."[5] Compl. ¶ 335.

AAII's admission regarding its size, when coupled with its admitted financial problems set forth in its SEC filings, prohibits AAII from now arguing that it is a successor to Pemco that is capable of having Pemco's rights assigned to it. The transfer or assignment of rights and obligations arising out of a bid or proposal is permissible in only a few limited circumstances, which are inapplicable here.[6] Ionics Inc., Comp. Gen. B-211180, Mar. 13, 1984, 84-1 CPD ¶ 290 at * 8-9; see also, To The Secretary of the Interior, 43 Comp. Gen. 353, 372, 1963 CPD ¶ 81 (the transfer or assignment of rights and obligations arising out of proposals submitted in negotiated procurements is to be avoided, both as a matter of public policy and a matter of sound procurement policy, unless such a transfer is effected by operation of law to a legal entity which is the complete successor in interest to the original). The rationale for this restriction is sound, and is based upon similar concerns that are behind the anti-assignment statutes, 41 U.S.C. § 15 ("Ant-Assignment Act") and 31 U.S.C. § 3727 ("Assignment of Claims Act").

Thus, because AAII admits that it is different from Pemco, Pemco's proposal is no longer valid. Similarly, because AAII is different from Pemco, it does not have a valid proposal before

---

[5] This admission further reflects the problem we explained above regarding the impact to the competitive process, as AAII now is trying to gain a post-award competitive advantage by claiming a new status. Thus, AAII is essentially asking the Court to endorse its post-award small-business status, which effectively is a major revision to Pemco's proposal, while at the same time arguing it possesses standing based upon Pemco's original offer. In doing so, AAII ignores the fact that Pemco's proposal is now fundamentally changed, because the evaluated proposal was that of a "large" financially stable business.

[6] This occurs when the transfer is to a legal entity which is the complete successor in interest; and here, AAII admits that it is "separate and distinct" from the other assets Pemco sold. Compl. ¶ 334.

the Air Force for it to consider. Finally, even if valid, Pemco cannot transfer its proposal to a different entity. Accordingly, AAII does not possess a valid economic interest in this procurement and, therefore, lacks standing to maintain this protest.

## CONCLUSION

For the reasons stated above, AAII's complaint should be dismissed.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 307-0383
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

MAJ CHRISTOPHER L. McMAHON
Air Force Legal Operations Agency
Arlington, Virginia

KENNETH C. KITZMILLER
Tinker Air Force Base Legal Office
Oklahoma City, Oklahoma

August 11, 2008

**CERTIFICATE OF FILING**

I hereby certify that on August 11, 2008, the attached document with its appendix was electronically filed, under seal. I understand that service upon all parties is complete upon filing and that authorized parties may access the filing through the Court's CM/ECF system.

s/Douglas K. Mickle